### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF WEST VIRGINIA
### BLUEFIELD DIVISION

**UNITED STATES OF AMERICA**

**v.**                                          **Criminal Action No. 1:01-cr-0007**
                                                **(Civil Action No. 1:05-cv-0175)**

**RODNEY EUGENE SMITH**

### MEMORANDUM OPINION AND ORDER

Pending are Defendant's (1) letter-form motion for return of property post-trial (#318), filed May 9, 2006, (2) motion for return of property post-trial (#356), filed June 26, 2007, (3) motion for summary judgment relating to his motion for return of property, along with a request for discovery (#378), filed September 17, 2007, and (4) motion for summary judgment for return of seized property and for failure of the government to respond to the Court's September 12, 2007, memorandum opinion and order, along with another request for discovery (#380), filed October 1, 2007.[1]

---

[1]On December 11, 2001, the Honorable David A. Faber entered the criminal judgment in this case. Defendant failed to notice an appeal. On September 9, 2003, the Honorable Charles H. Haden denied Defendant's motion pursuant to 28 U.S.C. § 2255. Defendant has persisted since that date in filing successive motions that attempt to collaterally attack his conviction and sentence without first securing the court of appeals' permission pursuant to section 2255.

On July 25, 2007, I resolved 25 post-judgment motions. On August 1, 2007, I resolved an additional 13 of Defendant's then-pending 15 post-judgment motions. On August 20, 2007, I denied the Defendant leave to appeal *in forma pauperis*. I noted Defendant's propensity for frivolous filings, observing (1) the denial of *in forma pauperis* status to Defendant on two prior occasions by Judges Faber and Haden, (2) Defendant's 200 prior requests for post-judgment relief, many of which were indecipherable or patently frivolous, and (3) Defendant's institution of eleven meritless civil actions filed both prior to and post-dating his conviction.

My August 1, 2007, memorandum opinion and order directed the government to respond to
(continued...)

I.

*A.      Governing Standard*

I treat defendant's return-of-property requests in documents 318 and 356 as made pursuant to Rule 41(g), which provides pertinently as follows:

> (g) Motion to Return Property. A person aggrieved by . . . the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g).[2]  As noted by our court of appeals, "'a motion for return of property made pursuant to Federal Rule of Criminal Procedure 41(e) . . . is "a civil action against the United States," "at least where no criminal proceedings are pending."'"  *United States v. Holland*, 214 F.3d 523, 527 (4th Cir. 2000) (quoting *United States v. Garcia*, 65 F.3d 17, 19 n. 2 (4th Cir.1995)) (quoting *Hunt v. Department of Justice*, 2 F.3d 96, 97 (5th Cir.1993)).

_____

[1](...continued)
the Defendant's two remaining motions found in documents 318 and 356 no later than September 4, 2007.  On September 11, 2007, the government moved to extend its time to respond to motions 318 and 356 (#375).  On September 12, 2007, I granted the government's motion to extend and deemed timely filed the government's contemporaneously submitted response brief.  Following my receipt of the government's response, Defendant filed the summary judgment motions that now pend (#378 and #380).  Inasmuch as Defendant seeks summary judgment based solely upon the government's failure to timely respond to the August 1, 2007, memorandum opinion and order, the filings lack merit.  Accordingly, I **DENY** motions 378 and 380.

[2]Some citations within reference Rule 41(e).  "As a result of the 2002 Amendments [to the Federal Rules of Criminal Procedure], Rule 41(e) now appears with minor stylistic changes as Rule 41(g)."  *United States v. Rayburn House Office Building*,  497 F.3d 654, 663 (D.C. Cir. 2007).

-2-

The United States Court of Appeals for the First Circuit recently summarized the law governing a Rule 41(g) request:

> Once seized property is no longer needed as evidence, a criminal defendant is presumed to have the right to its return. However, "[a] Rule 41[(g)] motion is properly denied 'if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture[,] or the government's need for the property as evidence continues.'" *Mills*, 991 F.2d at 612 (quoting *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1061 (9th Cir.1991)); *see also United States v. Saunders*, 957 F.2d 1488, 1495 (8th Cir.1992) (holding that "[t]he motion for the return of the paperwork, even papers that were not introduced at trial, was premature because defendant's direct appeal was still pending"); *Van Cauwenberghe*, 934 F.2d at 1061 (holding that a defendant's motion for the return of property may be denied based on the government's need for the property as evidence).

*United States v. Pierre*, 484 F.3d 75, 87 (1st Cir. 2007) (some citations omitted).  With these standards in mind, I turn to Defendant's motions.

B.    *Internal Revenue Service Form 8300*

Document 318 is a request for return of Defendant's "IRS Forms 8300[3] that were used as evidence at trial."  (Def.'s Ltr. Form Mot. at 2).  The government's response confirms use of the Forms 8300 at trial and further discloses that, following disposition, "the Court ordered that . . . [the Forms 8300] be released to the Internal Revenue Service."  (Govt.'s Resp. at 3).

It is unclear why Defendant requires the original Forms 8300.  Leaving that issue aside, on January 4, 2002, Defendant received notice of both the government motion and proposed order ("turnover order") that resulted ultimately in the Forms 8300 being transmitted to the IRS.  On

---

[3]With limited exceptions, 26 U.S.C. § 60501 requires any person engaged in, and in the course of, a trade or business who receives more than $10,000 in cash in a single transaction, or two or more related transactions, to report the event via IRS Form 8300. *See* 26 U.S.C. § 60501.

January 7, 2002, Defendant moved generally for the return of property seized from his dwelling, but only on the frivolous basis that "proof of jurisdiction" had not been shown. (Def.'s Req. for Mand. Judic. Not. at 1). Later, on January 11, 2002, Defendant noted receipt of the turnover order. He did not seek its vacatur and did not notice an appeal. On January 17, 2002, defendant filed another document requesting return of his property which, although not explicitly stated, appears based again upon his unfounded belief the government lacked jurisdiction to prosecute him. (Def.'s Third Req. for Mand. Judic. Not. at 1). The foregoing considerations illustrate Defendant received abundant notice and an opportunity to be heard regarding entry of the turnover order.

Nevertheless, the Forms 8300 remain in government possession. Further, the government has not discharged its burden under *Pierre* and like cases. It may do so by demonstrating (1) Defendant is not entitled to lawful possession of the Forms 8300, (2) the Forms 8300 qualify as contraband, (3) there remains a continuing governmental need for the Forms 8300, or (4) any other legally sufficient reason for retention. Accordingly, I **ORDER** the government, no later than December 3, 2007, to show cause why the Forms 8300 should not be returned to Defendant. Defendant's motion 318 is held in abeyance pending the government's response.

C.    *Cash, Metals, Coins, and Firearms*

Document 356 seeks the return of certain tangible items seized from Defendant's dwelling during the investigation of the offenses of conviction. Specifically, Defendant moves for the return of (1) "approximately $24,000 dollars with interest[,]" (2) "all coins, silver, gold, etc., in dollars at market value[,]" and (3) "the bags of silver coins or replace in dollars at the market value . . . ."

(Def.'s Mot. at 6) .  Defendant additionally requests "restitution for . . . [certain] sporting weapons seized in violation of the immunities as guaranteed by the Fourth and Fifth Amendment [sic] . . . ." (*Id.*)  Defendant values these firearms at $10,650 based upon language in document 380.  He additionally seeks the return of seized paraphernalia related to the weapons.[4]  The government's response to each of these requests is worth quoting at length:

> 1.  "Approximately $24,000" - This total was comprised of two cashier's checks in the amount of $21,690 and $2,332. These checks were admitted as evidence at trial as Government Exhibits 49 and 50, respectively. Following trial, the Court ordered these checks to be released by the United States Marshal Service to the United States District Court Clerk for the Southern District of West Virginia ("the Clerk's office") to be applied as payment of restitution as ordered by the Court. A copy of the Court's orders pertaining to these checks, dated January 4, 2002 and January 24, 2002, are attached hereto as Exhibits A and B, respectively. Following release to the Clerk's office, this money, totaling $24,022.00, was distributed as payment of restitution.
>
> 2. "Coins silver, gold, etc." and "bags of silver coins" - These items were admitted as evidence at trial as Government Exhibits 39 (21 silver bars) and 40 (various coins). As evidence [sic] by the Court's order attached hereto as Exhibit A, these items were also released to the Clerk's office to be applied as payment of restitution. Following release to the Clerk's office, these items, totaling $14,630.17, were distributed as payment of restitution.
>
> 3. The following firearms were admitted as evidence at trial:
>
>> a. Winchester model 94, 30-30 caliber rifle, serial number 3331722 (Exhibit 7);
>>
>> b. Western Field model M732, 30-06 caliber rifle, serial number 886275, with affixed tasco scope (Exhibit 8);
>>
>> c. Winchester model M59, 12 gauge shotgun, serial number 85675 (Exhibit 9);

---

[4]Defendant mentions "Ammunition and assorted equipment such as cleaning supplies for the sporting weapons. Had [sic] quite a few boxes of ammunition. Compensate [sic] at $500." (Def.'s Mot. at 8).  The relevant portion of the search inventory does not list anything in addition to the firearms and ammunition, with the exception of one scope, two holsters, a strap, magazines, and an owner's manual.  Each of these items were presumably destroyed pursuant to the January 4, 2002, order ("destruction order") mentioned in the within-quoted portion of the government's response.

d. Ivor Johnson target sealed 8, 22 caliber revolver, serial number M14188 (Exhibit 10);

e. Remington SpeedMaster model 552, 22 caliber rifle, serial number 237187 (Exhibit 11);

f. Savage Arms model 5, 22 caliber rifle with no visible serial number (Exhibit 12);

g. Mossberg and Sons 410 gauge bolt action rifle with no visible serial number (Exhibit 13); and

h. Tauraus 357 magnum revolver with wooden handle, serial number MB739370 (Exhibit 14).

Following trial, the Court ordered that these firearms be released by the United States Marshal Service to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") to be destroyed. A copy of the Court's [destruction] order pertaining to these firearms is attached hereto as Exhibit C. Following the return of the items to ATF, the firearms were destroyed.

(Govt.'s Resp. at 1-3).

In reply, Defendant does not challenge the government's contentions that (1) the seized metals and monies were properly applied toward the original $98,325.01 restitution obligation, or (2) the firearms were obliterated in accordance with the destruction order. Additionally, similar to the Forms 8300, Defendant received notice and an opportunity to be heard on this matter long ago. On January 4, 2002, Defendant received notice of both the destruction order and its precursor government motion. On January 7, 2002, Defendant moved for the return of the property seized during the search of his dwelling, but did so only on the frivolous basis that "proof of jurisdiction" had not been shown. (Def.'s Req. for Mand. Judic. Not. at 1). Later, on January 11, 2002, Defendant noted receipt of the January 4, 2002, destruction order and did not seek *vacatur*, noting again that he would "consider accepting" the order if "proof of jurisdiction" was shown. (Def.'s Sec. Req. for Mand. Judic. Not. at 1). Neither did Defendant notice an appeal. On January 17,

2002, Defendant filed another document requesting return of his property which, although not explicitly stated, appears based again upon his unfounded belief the government lacked jurisdiction to prosecute him.  (Def.'s Third Req. for Mand. Judic. Not. at 1).

These pragmatic considerations aside, Defendant is not entitled to return of the cash, metals, and coins since they have been lawfully applied to the restitution obligation.  *See United States v. Mills*, 991 F.2d 609, 612 (9th Cir. 1993) ("We hold that a valid restitution order under the VWPA gives the government a sufficient cognizable claim of ownership to defeat a defendant's Rule 41(e) motion for return of property, if that property is needed to satisfy the terms of the restitution order. . . . It follows that the district court had a legitimate reason to order that the defendant's property already in the government's possession be applied to his restitution obligation."); *see also Lavin v. United States*, 299 F.3d 123, 128 (2nd Cir. 2002) ("When, in that [criminal] judgment, the District Court reduced the amount of restitution Lavin owed, it merely applied the money confiscated by the Government as the fruits of Lavin's illegal scheme, and upon which the Government had acquired a lien, to help satisfy Lavin's obligation of restitution. Accordingly, the District Court allocated the seized criminal proceeds for Lavin's benefit."); *United States v. Duncan*, 918 F.2d 647, 654 (6th Cir.1990) (noting in a similar setting that the district court "essentially allocated the defendant's property for his benefit rather than depriving him of the property altogether."); *see generally* 18 U.S.C. § 3613.[5]

Neither is Defendant entitled to the remaining tangible items which were long ago destroyed. First, the foregoing discussion of the notice provided Defendant prior to and contemporaneous with the destruction order counsels strongly in favor of a finding of laches.  In sum, Defendant's delay

---

[5]I reach this conclusion with an awareness of *United States v. Minor*, 228 F.3d 352 (4th Cir. 2000). *Minor* involved a forfeiture proceeding and lacked a restitution order.  Those two factors alone distinguish it from the present circumstances.

in challenging the destruction order has prejudiced the government.  In any event, leaving the laches

disposition aside, a more straightforward analysis is fatal to Defendant's request.

As noted, the tangible property sought by Defendant has now been obliterated in accordance

with the destruction order.  Defendant's return request is thus properly characterized as a thinly

disguised prayer for damages resulting from the destruction order.  Viewed in this light, binding

precedent forecloses Defendant's request.

In *United States v. Jones*, 225 F.3d 468 (4th Cir. 2000), the court of appeals confronted a

return-of-property request for tangible items that included firearms and gold jewelry.  Prior to the

filing of the defendant's request in that case, however, the government had "destroyed or disposed

of otherwise" the firearms, jewelry and other items. *Id.* at 468.   The court of appeals observed as

follows:

> Sovereign immunity deprives a court of jurisdiction. See *Global Mail Ltd. v. United States Postal Serv.*, 142 F.3d 208, 210 (4th Cir.1998). Further, sovereign immunity can be waived only by an unequivocal and express act of Congress. *See Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). Rule 41(e) does not contain a waiver of sovereign immunity. *See* Fed.R.Crim.P. 41(e). We therefore agree with the Third and Fifth Circuits that courts lack jurisdiction to award damages under Rule 41(e). *See Bein*, 214 F.3d at 412-16; *Pena*, 157 F.3d at 986. Accordingly, we hold that the district court correctly concluded that it lacked jurisdiction to award damages under Rule 41(e) for the property destroyed by the Government.

*Id.* at 469-70 (footnote omitted).

Pursuant to *Jones*, I find lacking the subject matter jurisdiction necessary to consider an

award of damages effectively sought by Defendant respecting the obliterated firearms and related

paraphernalia.[6]  Based upon the foregoing analysis regarding the cash, metals, coins, and firearms, I **DENY** Defendant's motion 356.[7]

I withhold entry of final judgment pending the outcome of Defendant's motion seeking return of the Forms 8300.

The court **DIRECTS** the Clerk to send a certified copy of this Memorandum Opinion and Order to Magistrate Judge VanDervort, counsel of record, and any unrepresented party.[8]

ENTER:        November 13, 2007

Joseph R. Goodwin, Chief Judge

---

[6]Assuming Defendant could recover the requested damages, they would likely be applied ultimately to the $68,715.33 balance remaining on the restitution obligation.

[7]Defendant states that "[i]f this Court disallows recovery of IRS funds, Plaintiff [sic] requests discovery on that issue as Plaintiff [sic] disputes that issue."  (Def.'s Reply at 1 (Oct. 1, 2007); *see also* Def.'s Reply at 1 (Sept. 17, 2007)).  Based upon the foregoing discussion, discovery is unnecessary or, alternatively, was waived by Defendant's failure to timely challenge the order applying the identified funds to the restitution obligation.

[8]The court notes the government's September 11, 2007, motion to extend (#375) yet pends in a companion civil action styled *Smith v. United States*, No. 1:05-175.  The motion should be terminated in a manner that it reflects the prior disposition of document #375 in this action.